We'll call the next case, Snavely v. Miller, the consolidated cases. We'll both be heard together. You may begin. May it please the Court, my name is Jerry Sale, appearing for Bonnie Snavely individually and also arguing on behalf of Bonnie Snavely as trustee. Okay, Mr. Sale, sometime, at some point in your argument, I mean, handle your argument as you have it planned, but at some point, I hope you'll address why we're even here on any issue except the easement. It seems to me the other issues, they appear to be moot if the property is already partitioned and sold. So I hope at some point you'll address that. I would like to reserve five, if I may. I will address that, then. I was going to address that in rebuttal in response to the motion. Oh, you're addressing it right now. All right. And I was hoping that, in fact, you found that we shouldn't be here because, in fact, the Court did not have jurisdiction. There are at least four reasons why this is not moot. The first reason why it's not moot is very simple. There are a myriad of issues that have to do with many things other than the sale of this property. This Court has purported to take over administration of the trust, a matter over which it should have no jurisdiction, never should have touched. But in doing so, it has purported to act and require things of Ms. Snavely and adjudicate all the things in regard to the administration of the trust, which continue. And this Court's decision will affect that. The second reason is also very simple, and that is because Mr. Miller remains in this litigation, and if that sale is made, he is still in the litigation for purposes of making good. And if that sale is made, if that sale is considered, sorry, to be good and not voided, the sale to Yellowstone Fly, if that sale is considered to be final and irreversible, Mr. Miller remains in the litigation. Where is that under attack, the validity of the sale? That's under attack in regard to the fact that this Court had no jurisdiction at all to decide any issue. The bankruptcy court did not. This is the entire premise of our argument, in fact, is that there was nothing in the bankruptcy court over which the bankruptcy court could take jurisdiction at any time. The third reason on the mootness argument, then, takes us to the question raised by In re Sachs, and that is the question about whether, if this court was without jurisdiction over that property, could it then make an order conveying that property and have that order be effective? What we've called the ---- Kennedy. I think that it wasn't, even assuming it wasn't a proper order, the order wasn't stayed. The property has been transferred. So why doesn't that render your challenge to the order moot? Well, I think it doesn't render it moot for a number of reasons. The primary one I would call the Brooklyn Bridge argument, and that is if Mr. Miller ---- I don't have a case for that one. Pardon? The Brooklyn Bridge argument? Yes, we do. We have the Bloomer case and we have the Gruntz case. Both Gruntz ---- Gruntz, one of the fundamental issues in Gruntz, which is argued by the other side, is that orders that are without jurisdiction are void ob initio. The proposal of the stay, which comes from 363M, is a provision of the code that governs what the court can do. But if the court has no jurisdiction, then that wouldn't apply. If the court decided, and this is the Brooklyn Bridge argument, and Bloomer says the same thing, that if the court decided that it wanted ---- Mr. Miller proposed to sell the Brooklyn Bridge, and the court authorized the sale of that Brooklyn Bridge, then that would affect it, and that can't be. And the Bloomer case says the same thing in an identical ---- identical circumstance, 364 rather than 363. It says that if there is no jurisdiction, then that does not apply. Now, what I would really ---- Kennedy, however, didn't have any interest in the Brooklyn Bridge, but he did have an interest in the property that was sold. He did not have an interest in the property that was sold. And that's the thing that is extremely important. And what the bankruptcy done ---- what the Bankruptcy Court has done and succeeded in doing is conflating the idea that his beneficial interest in the trust became an actual interest in the property, none of which is true. Here's the important consideration in regard to jurisdiction that I would like this Court, please, to understand, and it is this, that this State court in Washington decided an issue of State law. It decided that issue of State law long before bankruptcy was ever in the picture. And that question of State law was that that trust continued after August 26, 2000. That's an issue of State law that is decided. It has nothing to do with grunts because bankruptcy is not an issue. Applicability of the stay is not an issue. That's a predicate State determination. And it was made in this Court by a ---- in this State by a court with jurisdiction to make that decision. The only way the Bankruptcy Court can obtain jurisdiction over any part of that trust is for the Bankruptcy Court to overrule that State court determination. And wherein does it derive that right? Rooker-Feldman tells us that the Court does not have authority to do that. Absolutely not. That ---- Roberts. Rooker-Feldman a bankruptcy case? It was not. Grunts is the bankruptcy case. Now, grunts, however, this is this particular ---- there are two ways of looking at grunts here and analyzing grunts. And we don't need to reach the hard way. I'd be happy to do that, although my time being even more curtailed doesn't help us get there. But there are two ways of looking at grunts. One of them is that it talks about pre-petition determinations as being outside the rule of grunts. And that's where we are. The only ---- the only catch to that at all is grunts says pre-petition judgments. We don't have a judgment. Of course, the only reason we don't have a judgment that occurred before the petition was that Mr. Miller ran off to another court in bad faith. What are you asking us to do with a King County judgment? Pardon? What are you asking us to do with a King County judgment? I am asking you to reinstate the King County judgment. That is ---- Or actively lift the automatic stay and reinstate the King County judgment. Simply to rule that the bankruptcy court was without jurisdiction to do anything that it did in regard to the trust. That authorizes the sale, then? Pardon? That would authorize the sale of the ranch property from the trust to Snavely? It would if that can ---- if that determination can be made. That also requires a determination of what happens to the Yellowstone fly in this case. Here's the problem, though. Snavely and Miller have both sold their shares to third parties, haven't they? Mr. Miller ---- You're trying to unscramble an awful lot of eggs. Well, there may be eggs to unscramble in regard to the sale of that property, but there are many eggs of great concern in regard to who has the rights to it, who's going to get paid in regard to duties that they had in regard to the trust, where the administrative fees come from, who's responsible for the attorney fees, including all the attorney fees that it's cost to relitigate a case that was decided in Washington. All of the issues that were decided in Washington are being relitigated in Montana in bad faith, and it's in bad faith for the very simple reason. The court found bad faith, in fact, and then held it wasn't bad faith. What the cases are very clear about is that moving ---- if all you're doing when you file your bankruptcy is selecting a forum, that's bad faith. And if you couple that with an idea that there's no reorganization to be had, there's no legitimate reason why you're there for bankruptcy reasons, that's further bad faith. And in this case, the court recognized that the reason why this was filed in Montana Bankruptcy Court was specifically to get to Montana. The court said that's why. Ms. Gable could have gone there and asked for relief from the automatic stay and did not do that. She did. I'm sorry. Retroactively, not prospectively. No, she did. She asked for relief from the stay, and that was denied. And that's not sufficient protection. That's exactly what we're talking about here, is that where Ms. Navely has gone to state court, and as she is supposed to do, has obtained an approval of a sale in state court, has approved an accounting of the trust in state court, has had all the determinations made as to the administration in state court, and the state court has made a determination about a state law property issue, it is not for the federal court to take that case away and decide it again, including deciding the predicate issue of state law, which under Rooker-Feldman, it may not consider. It has no jurisdiction to determine whether or not that is property under Washington state law, if that's already been decided. Bankruptcy was filed after all the state proceedings were determined? There were three decisions made by the bankruptcy court. Looking at the King County, what you're saying is... I'm sorry. I meant King County. Yes, sorry. There are three determinations. The second one was a summary judgment in which that issue was decided. Then there was a trial. Immediately after the trial, there was, on two days before the filing, there was a hearing at which the court announced how she was ruling. She then said, reduce this to findings of fact and conclusions of law. And two days later, before those could be put into the court in writing... Filed for bankruptcy. He filed for bankruptcy. He got the automatic stay. And the court in the bankruptcy court decided that the automatic stay under Grunts prevented them from doing anything further four weeks before the bankruptcy court... But is it, is it, whether this gives you a ground or not, just factually, is it correct that bankruptcy was filed in Montana before the King County case reached a final judgment? It is technically correct. It is a correct period. Well, it is correct in this sense and only this sense. The court said how it was going to rule and asked counsel to submit that in writing. But by a final judgment, I mean an official judgment that's entered that resolves the case. I understand. So what Mr. Miller did not occur, right? You knew, you knew what the court intended to do, but the final judgment had not been filed and entered. Yes. The situation that was in the case of In re Marsh, the bankruptcy court got that wrong. In re Marsh was exactly that situation where the court had ruled, said, go, go to the pleadings and in the interim, they went out and filed bankruptcy. And the court said, that's, that's bad faith in that circumstance. But at that point, am I, do I understand what happened was instead of, instead of Ms. Snavely going to the bankruptcy court in Montana and saying, we've done all this stuff, we want relief from the state to get that case concluded, it just went ahead without relief from the state? No, that's, I mean, half of that is true. Half of that is not. Ms. Snavely tried valiantly to convince the court that the state did not apply, to annul the state and send it back, pointing out to the court that these are issues of state law. They need to be decided there. Not only that, they were decided there. Before they, before the state court judgment was entered. Sorry, not before the state, no, I beg your pardon. Not before the state court judgment was entered. That's what I'm asking. I, I, I beg your pardon. Yes. Before. No, before. The filing occurred before the final judgment was entered in state court. That's right. My question was, did Snavely, Ms. Snavely, at that point, seek relief from the state before proceeding to get a final judgment in King County? What Ms. Snavely did then, and this takes us to the second part of Grunts, is what Ms. Snavely did is, in the state court, determine the applicability of the state. Now, that takes us to the question in Grunts about when post-petition determinations by the state court may be binding. Wait a minute. So she, instead of going to the bankruptcy court to resolve the issue, she went, decided to litigate it on the state side. There was a hearing scheduled for two days after the filing. At that hearing, Mr. Miller's attorneys came in and said, you can't have this hearing. At a hearing scheduled where? In Washington. In King County. In King County, correct. In King County Superior Court. Yes. And Ms. Snavely had not gone to – I don't know if she knew about the bankruptcy filing or not at that point, but she hadn't gone there immediately. And now at the hearing date, Mr. Miller came in and objected. Yes. And said, you can't do this because I filed for bankruptcy. Two days later, yes. Okay. The hearing was scheduled for the 21st and on the 19th, Mr. Miller scheduled. Then he comes in on the 21st at this hearing and argues this can't go forward. That leaves to the state court, then, the question of the applicability of the stay. And that takes us to the next issue in Grunts about whether post-petition determinations by the state court can be made by the state court and whether, if they're made by the state court, they're binding on the Federal bankruptcy court. And I would propose, looking at the In re McGann case, which specifically leaves this issue open, your decision, Judge Fischer, specifically leaves this issue open, that the question of applicability of the stay is for the state court to decide. If the state court, rather than the Federal bankruptcy court, decides applicability of the bankruptcy court's stay? Absolutely. Because the question here is this on the applicability of the stay. The question is, is this property, is that issue a fence of trust that still exists? Now, in this case, as I already mentioned, that has been decided by the state court pre-petition three times. So now the Court is presented with the question, well, is this trust subject to the bankruptcy court? You said it was decided three times. But are we still we talking about the same issue where a final judgment hadn't been entered? That's correct. A final judgment hadn't been entered. So you can't really say it's decided in a sense until there's a final judgment. It's not finally decided until there's a final judgment. Absolutely, I can. In that, it was not a final judgment, I agree. Mr. Miller was in that litigation, and he was subject to that litigation. Those rulings by the Court were not void. They were not void ab initio. The only reason judgment would not have been entered in this case is because he ran off to bankruptcy court and filed. The only reason it wasn't entered pre-petition is that he went off to bankruptcy court and filed. I understand that, but that would, at least it strikes me, that's a reason to go to the bankruptcy court and ask for relief from the stay, and if the bankruptcy court doesn't give relief from the stay before the judgment's entered in the State court, then that can be appealed. Well, I believe that's incorrect. I believe that under Gruntz, the applicability of the stay can be determined by the State court, and if it is a State court predicate issue, that is, if it's a Washington State issue concerning property in Washington State, then that's particularly the province of the State court to determine the applicability in that case. I disagree with you on that, then. In other words, if our conclusion is that once the bankruptcy petition was filed, then jurisdiction to resolve issues of the kind you're talking about, the impact of the stay and the scope of the stay and whether the bankruptcy is in bad faith, then you lose, is that it? I'm sorry. Then you lose. No, I don't, actually. Then if this Court decides that the – then this Court would decide the issue on appeal about whether or not the trust was, in fact, in existence. I see. Counsel, you're down to two minutes. Thank you. Good morning. May it please the Court. My name is John Vinnie, representing the appellee, Douglas Miller, in this case, and I will primarily field questions from the panel, but my argument today will focus on the fact, as the Court has identified, that the appeals filed by Ms. Snavely are moot in this case. Well, it seems – I mean, we have to address that, but it seems that if there's some preliminary rulings made in a state court proceeding, and final judgment is, you know, on the eve of being entered, and somebody runs into bankruptcy court at that point to file a bankruptcy petition, it seems somewhat questionable, you know, so how do you deal with that? I mean – In two respects, Your Honor. You can't act wrongfully in filing a bankruptcy petition. Yes, Your Honor, in two respects. First of all, it's our position that – and the Bankruptcy Court found this – that Mr. Miller had other issues involved. He did have an operating business. He was land-rich but cash-poor. He had land that had never been a part of the trust that he had been unable to sell because of issues regarding easements, access thereto. Those issues were in the Federal court in Montana. prior to the King County litigation. So he had other issues. It wasn't just the trust issue involved. Second, I think if the court looks at this, that the property has been sold. That implicates the rights of the purchaser, Yellowstone Fly. They're not a party to this appeal, essentially. Also, Mr. Miller, after these preliminary hearings, as the court is aware, the bankruptcy process is sort of a fluid process. There were a number of orders, starting with the ones that are subject to argument today in May, June, as well as September and November of 2001. After that, we had the order of sale in February of 2002. We had the confirmation of the Chapter 11 plan in March. None of those orders have been stayed. There's been no supersedious bond posted by Ms. Snavely. She had the ability to do those things. And so in the present context, I believe that basically under the authorities within the Ninth Circuit and otherwise, that the appeal is moot. So what's the explanation for that? You're probably not the right person to ask, but why no stays of any of these orders? Now the whole thing has gone down the road. Well, Your Honor, and that is a question that I'm not able to answer in my own mind, but I guess originally, in these appeals, the appeals before the court, Ms. Snavely did request a stay, but did not post any sort of bond. By the time we got to the confirmation order and the sale, Ms. Snavely did not post a bond or do anything else. The one thing she did, as this Court is aware, based on the supplementation of the record, is that she did request a stay right after the sale of the bankruptcy court. No bond tendered. She then requested the district court and the appeal at that time to the district court be stayed. And when that wasn't granted, she asked this court, the Ninth Circuit, on a petition for mandamus and essentially a motion to stay the proceedings. That was evaluated by this Court, and the Court did stay the proceedings until March 11th, and at that point ruled, denied the request for petition. So Ms. Snavely did make requests there, but she never posted a bond, and there – and essentially, I don't know why there wasn't a stay. Your opponent says that the administration of the trust continues, and in that respect, this has not moved. Well, Your Honor, first of all, I think that we need to focus on two different things. The land is sold. It appears to me that – Everybody sold everything. And Ms. Snavely sold her. That also, I think, implicates a second doctrine of mootness, the equitable mootness, where she's taken advantage of the partition. She sold her portion of the property to now come to this Court and say, undo the sale that Mr. Miller has done, despite the fact we have a buyer that is not a party to this appeal, despite the fact we have a number of creditors who have been paid under a confirmed Chapter 11 plan who are not a party to this appeal, take that back and proceed. I don't think that can be done. In terms of the argument regarding easement, I will be happy to address that later today, but that is a separate issue. The easement issue is separate from the mootness. In addition, what I would suggest to the Court, that if the Court determines the appeal is moot as to the land, the sale should stand, but there may be some remaining issues on whether and who should have decided how much money was owed. Now, I would first argue, and I have in the brief, that under the Slatt case, that it was proper for the bankruptcy judge to say, I'm the one that needs to determine how much Mr. Miller owes to Ms. Snavely or the trust. And a proof of claim was filed. That was a five-day trial in the bankruptcy court. The court determined that Ms. Snavely was owed a certain amount of money, but she offset that against claims that Mr. Miller had completely outside of the King County litigation, claims he had in the federal court in Montana before the King County litigation. He offset her claim allowance of a small amount against a larger amount owed to Mr. Miller. There's a net judgment. That's the January 25th judgment that was appealed to the district court. The district court affirmed that. That is now in this circuit, and we're in briefing on that now. That matter will be argued, I assume, in the near future. I would be happy, Your Honors, to have this panel look at that argument. I would also suggest that a worst-case scenario, the court should say, the land sale is moot. That stands. The payments to the creditor stand. But that we will consider in the current appeal that is not ripe for argument yet, that whether Ms. Snavely or the trust is owed more money against Mr. Miller, who should have made those determinations, the King County. Are those issues before us on the – those issues are – is that not before us right now on the appeals before us? That – those issues, as I understand, are before the court. They are in the briefing process, Your Honor. It's not this court, though. I mean, not this panel. Not this – it has not been assigned to this panel to my knowledge. There's a third case out there. There's – well, in fact, there's that case, Ms. Snavely. There's three other cases after that. And that is the appeal – or four other cases. These are different than 02035248. Six cases. 35290 and 35313 you're talking about. Yes, Your Honor. Let me just recite. I have it – I have a matrix in front of me. The only cases that I have had briefing on are the ones I just mentioned, 0235248, 35290, and 35313. And those are what we're – In the briefs, I don't know what the other issues are that you're talking about. And at least as one judge, I'm not prepared to make any ruling on issues in other cases that we don't – that I don't know anything about. So are you telling us that the administration – that the trust is winding its way up to the Ninth Circuit on a different track? No, Your Honor. What I'm saying is this. What I'm saying is that, Judge, there is – the appeal is – just for clarity of the record, the appeal that I've referred to is the January 25, 2002, decision by the Bankruptcy Court in the adversary proceeding. As a part of that – And what's the number of that? The Ninth Circuit case number is 0335317. And we – appellant filed the original brief. We filed a brief. Has not been set for argument, and my understanding, has not yet been assigned to a panel. Were those identified in the briefs as related cases? I believe that they were, and they – I believe also, in terms of our request for judicial notice that we filed in the case, that they are referenced there. And just, again, for the sake of completeness, Your Honors, there have been actually four other appeals after that. They are the appeals from the Bankruptcy Court, the sale to Yellowstone Flight. That has a Ninth Circuit appeal number of 0335788. Briefing has not commenced. Likewise, a Liz Pendence was filed by Ms. Snavely, and Judge Peterson, the bankruptcy judge, required that be released, which it was. She again appealed that, but no stay, no bond posted. That's now reached the Ninth Circuit in 0335746. The planned confirmation hearing was appealed, and that appeals to the Ninth Circuit now at 0335789. And so what are you asking us to do in this case? Your Honor, what I'm asking is essentially two things. First, I'm asking the Court to determine that the appeals we have currently are moot, and dismiss all of these appeals in their entirety. On the ground that the property's been sold, no stay was attained? Exactly. And the creditors have been paid. The creditors have been paid. Now, what happens to the easement? It appears that monetary relief might be an effective remedy in that case. And that's what, and perhaps not very articulately, Your Honor, what I tried to suggest, that worst-case scenario, what I would suggest is that the Court indicate that monetary claims by Snavely could be determined in her appeal from the monetary judgment. That is the first subsequent appeal that I just referenced. Appeal that we've had. How can we, I mean, how can we possibly make a ruling that references something that can be done on that appeal when that appeal wasn't assigned to our panel? We don't have the briefing on it. We don't know anything about that appeal except what you're telling us right now. Yes, Your Honor. And again, there is materials in the request for judicial notice of that. And in terms of the mechanism, the only thing that I can suggest is one or two alternatives, whatever is appropriate within the rules of the circuit. I suppose, you know, we could decide these appeals we have before us, and we could possibly consider whether the circuit should assign other related cases to us, or maybe we could duck or defer these cases and suggest that the circuit assign these cases to some other panel that gets assigned all the other cases, so that all these cases are decided by one panel. Because it seems that there may be some interrelation on them. But I don't know if that necessarily means that we should try to figure them all out. I guess we can come to that later. I think that's something we'd have to resolve in terms of. I understand, Your Honor. And I'm just trying to address the one issue that I think is the only issue that can survive the mootness claim. Here's what I would suggest, at least for me. I'm not speaking of my colleague. But if the easement issue is not moot, then I'd like to hear you address it on the merits. And because I'm not able right now to think in terms of somehow getting it into the courts. I'm not able to think of a way to get it into another appeal that's not performing. I understand, Your Honor. Thank you. In terms of the easement, it is our position, as found by the Bankruptcy Court, that Mr. Miller was entitled to easements based on the 1980 Family Agreement. Mr. Judge Peterson in the Bankruptcy Court on November 27th made that finding. And that is a part of the Appeal 0235-313, which we're here for today. And it is our position, as stated in the briefs, that Judge Peterson was correct in making that determination, that there's no release or accord in satisfaction that eliminates Mr. Miller's right to that easement. That easement was based on the 1980 Family Agreement. The Bankruptcy Court, after hearing testimony from both sides, found that that agreement survived and that Mr. Miller was entitled to that easement. Ms. Navely, in her initial briefing to this Court, argued that that had been rejected as a part of her confirmed bankruptcy plan when it was pointed out in reply that she did not list the easement as an executory contract or otherwise. Ms. Navely has changed her position and now argues that a 1994 settlement agreement in her mother's bankruptcy, also involving this property, somehow constituted an accord in satisfaction. If the Court looks closely at that documentation, it indicates essentially that Mr. Miller would sell some of this property, a property that is at issue today, a property that many years later became a part of his plan, to Ms. Navely. She had the right to buy it and eliminate these issues. She didn't close on that. What Snavely focuses on is that there was a standard mutual release language in that agreement, that the parties would mutually release each other. The contention of Snavely is that that essentially releases his easement. But there's nothing in the agreement that specifically indicates that that any easements under the 1980 family agreement were being released. And it's our position, based on the case cited there, that that survived. Judge Peterson, the Bankruptcy Court, heard the testimony of both Snavely and Miller. There was conflicting testimony that that easement survives and that essentially the easement awarded in the November 27th decision by the Bankruptcy Court applies. The other argument they've said is that Mr. Miller filed a claim in Ms. Snavely's bankruptcy. In 1995, Ms. Snavely filed the first of her two Chapter 11s in the State of Washington. Mr. Miller filed a damage claim for $445,000. One component of that damage claim was a claim for damages for loss of use of easement, inability to sell property, that sort of thing. Judge Steiner in the Western District of Washington ran a Snavely summary judgment. Mr. Miller was pro se on that. There were no specific findings regarding the family agreement. It is our position that that is not precluded by res judicata or claim preclusion. They're different things. He was looking for damages there for a timeframe up to her, up to the time of her bankruptcy. So the ---- Your Honor, I would certainly be hopeful that could be the case, but I would candidly advise the Court that Roxanne Ash, who is a mediator here with the Ninth Circuit, has contacted the parties when they started, and we were unable to reach agreement on scheduling one. I certainly am not averse. You couldn't even agree on scheduling mediation? Your Honor, it was ---- the indication to me was that it was not something that was going to be a part of the litigation. I'm certainly willing to allow the Court, if they wish to do so, to defer ruling in this matter and order mediation, and we would certainly attend. I'm certainly not trying to force anything down anybody's throat, but it just seems to me, listening to you and talking about all these appeals and everything that's at issue, that it might be in somebody's interest to try to sit down and hash this out. I don't know. Maybe there's so much bad blood between the family members here that it's not possible. I just don't know. But it seems to me that this is something that might be settled by the mediation process. Well, and I would indicate to the Court, on behalf of Mr. Miller, we would be happy to be involved in that. I am not optimistic, however, and it's the reason that we have, you know, pushed this matter forward. We believe the appeals are moot. I can see why you might not be optimistic after looking at this. Thank you, Your Honor. Anything else you'd like to bring to our attention? Yes, if I could briefly. I did want to talk about two other subjects very briefly. First is the Grunt's, what I call the Grunt's Trilogy, although it maybe is expanding beyond that, Grunt's, Dunbar, and McGann. I believe that counsel's representation about the effect of those, specifically the ability of a state court, after the filing of a bankruptcy, to determine, essentially to determine the applicability of the bankruptcy stay is improper, and that under the doctrine of Grunt's, Dunbar, and Your Honor's decision recently in McGann, that that is not the case. That the bankruptcy court had the exclusive right to make that determination, and that accordingly there is no final judgment that Rupert Feldman did not preclude the bankruptcy judge in this case from proceeding as he did for all of the orders that were made. And I did want to confirm, I believe, what counsel ultimately, after some painful questioning, admitted, and that is Ms. Navely did not, upon learning of the filing of the bankruptcy by Mr. Miller and her counsel in Seattle, were told before the March 21st hearing that a bankruptcy was filed. Nonetheless, they attended, and even though Mr. Miller's Seattle counsel said the bankruptcy's filed, this has stayed. They requested the judge in the Superior Court in Seattle proceed and proceed to judgment. They did so before. Kennedy. Who was the judge in that case? Carvin. Judge Kathleen Learned. Kennedy. How did she react to this? Carvin. Judge, as my understanding is, I was not at that hearing, but my understanding is that Judge Learned indicated that it was her view, based on arguments of Ms. Navely, that this stay applied and to enter final decisions without Ms. Navely having to go to the bankruptcy court in Montana. Who was representing? Do you know who was representing Mr. Miller before her? Carvin. Representing Ms. Navely? Was Mr. Miller pro se before her? Carvin. No. Tom Kelly of Preston Gates was representing Mr. Miller at that hearing. And your next point is? Carvin. I'm sorry, Your Honor. And my next point involves the Sachs progeny, and I understand that the Ninth Circuit has not adopted a specific finding on the issue addressed by Sachs, that issue being if there is a contention, as Navely has made here, that the bankruptcy court lacks subject matter jurisdiction, lacks jurisdiction over certain property, and nonetheless a sale occurs of that property to a third party who is not a party to the appeal, is this court able to grant relief in the form of undoing that sale? As the court knows, the court in Sachs indicated it involved a yacht. The yacht was sold. An objecting party indicated that the bankruptcy court there had no jurisdiction over the yacht, and the circuit there indicated that was not the case. And the important focus there was that the sale was authorized, not that the sale was proper. Likewise, the other circuits that have looked at that, the Gilchrest Court basically made the same findings when it was presented with that. So in addition, and that's the Fifth and the Seventh Circuits is my recollection. My feeling also is that this circuit, based on a number of decisions that it has made, starting 15 years ago in the Annuli-Kona land case, where it found that in a bankruptcy case it's very important to have finality, it's important to protect property, third-party buyers, that under that circumstances, and that is, I think, developed, as we pointed out in our brief in the cases since then, that I believe that this circuit would find that Sachs should be adopted, even if a party raises the jurisdiction of the bankruptcy court. And I don't admit, but even assuming that Ms. Navely's arguments is that the state court perhaps had some rights under Rooker-Feldman. I have a question for you. Yes, Your Honor. Maybe it's not relevant under these precedents, but I'm curious. Do you know whether at the hearing before Judge Learned in King County, Miller's then-counsel told Judge Learned that it was Miller's view that the King County court had to stand down and didn't have jurisdiction? Your Honor, I can only speculate, but that is my understanding. I don't want speculation. I'm just asking if you know if that's in the record. I believe that is, but I can't say with all certainty. Finally, if I could, on the Sachs, essentially on the Sachs progeny, I would indicate that counsel has referred to the Bloomer case here in the Ninth Circuit saying that that stands for the proposition that this circuit would not adopt Sachs. I think that the most important thing about Bloomer is that what turned that decision was that in the bankruptcy case there, there was no due process given. Essentially, something was done without giving notice to creditors. In this case, Ms. Snavely admits that she got notice of the motion for sale. She got notice of all of the other matters, and she admits, her counsel admits, that she has not been deprived of due process. So I think if you look at the overlap of the cases here, the cases that have developed in the Ninth Circuit regarding mootness and the need for finality, that the Ninth Circuit should adopt Sachs, and this case should be dismissed as moot. I think that's all my time. Thank you very much. Thank you, counsel. We'll hear from the other side. Mr. Sale, do you have any oil to cast on troubled waters now? Yes, and not enough time to do it well, I think. Is mediation possible or forget it? I don't think mediation is a likely outcome here. In regard to that, what had happened almost is that the case was almost resolved in Washington because the trust would have been distributed with the approval of a court and the accounting. What happened next was it was moved to Montana, and it became the monster that ate Missoula. It was close. And the problem is, as I'm here today trying to tell you, is the Montana court didn't have jurisdiction and shouldn't be there, and something else should be done. I do want to point out just a couple of things in regard to what was said. Those Mr. Kelly did present to Judge Learned that she didn't have authority. Judge Learned looked at this and said, there's an issue here. Is this trust terminated? And she said, I've decided that. And if the trust is not terminated, everybody knows what the answer is, that you don't have to interpret, like Gruntz, you don't have to interpret the law of the Federal law, because you know, if it's a spendthrift trust, it never goes there. The State would never catch. Nothing ever happens. That's what State courts do. That, I believe, is what Gruntz allows them to do. It's not a court proceeding, because it doesn't annul, terminate, or modify the State. It's simply the court sitting there and saying, this is an issue of State law. What's the issue of State law say? And she could decide that. Having decided that, she went forward, holding back on the one issue that would affect the bankruptcy, and that was whether or not Mr. Miller had to pay anything into the court. She did not decide that issue, because that was State. But other than that, the State didn't apply. This Court could find that she was correct, but my argument is under Rooker-Feldman, this Court doesn't consider that issue, because the question of whether or not that trust terminated was a State law question decided before the bankruptcy ever occurred and certainly also correctly once the bankruptcy did occur. The reason for the stay was because at the time, as was pointed out, there were many things done to try to get the court to stay it. Everything that could be done was done to try to get the court to stay it. No supersedes was filed. At the time that Ms. Snavely was in her own personal bankruptcy. And I've run out of time, so I can't address the easement. We have read the briefing. It's extensive, so is the record. I would simply encourage the two of you, while you're here, to discuss once again the possibility of mediation. Our services, services of our court are open to you. If you think that's a possibility, please let us know early next week. Otherwise, this case is ordered to submit, and we'll get your decisions as quickly as we can. Thank you very much. Thank you. You are provided.
judges: Trott, Fisher, Gould